UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CRYSTAL ANN SEIFRIED, *on behalf of A.A.B.,*

                        Plaintiff,

v.                                            6:13-CV-00347

                                            (LEK/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES:                        OF COUNSEL:

OLINSKY LAW GROUP            HOWARD D. OLINSKY, ESQ.
*Counsel for Plaintiff*
One Park Place
300 South State Street, Suite 420
Syracuse, New York 13202


HON. RICHARD S. HARTUNIAN     VERNON NORWOOD
United States Attorney for the          Special Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL      STEPHEN P. CONTE, ESQ.
Social Security Administration        Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT AND RECOMMENDATION

     This matter was referred to the undersigned for report and recommendation by the

Honorable Lawrence E. Kahn, United States Senior Judge, pursuant to 28 U.S.C. § 636(b) and

Northern District of New York Local Rule 72.3.  This case has proceeded in accordance with

General Order 18 of this Court which sets forth the procedures to be followed when appealing a

denial of Social Security benefits.  Both parties have filed briefs.  Oral argument was not heard.

For the reasons discussed below, it is recommended that the Court remand this matter to the

Commissioner for further proceedings consistent with this Report-Recommendation.

## I.      BACKGROUND AND PROCEDURAL HISTORY

A.A.B. (herein referred to as "the Child") was eleven years old at the time of the hearing.

(Administrative Transcript ("T.") at 55.[1])  Plaintiff Crystal Seifried (herein referred to as "the

Guardian") alleges the Child suffers a disability due to ADHD.  (T. at 59.)

The Guardian applied for SSI on behalf of the Child on April 30, 2010.   (T. at 154-57.)

The application was denied on July 30, 2010.  (T. at 73.)  Plaintiff requested a hearing before an

Administrative Law Judge ("ALJ").  (T. at 79.)  On June 9, 2011, a hearing was held before

Administrative Law Judge Tom Tielens, where testimony was postponed so that the Guardian

could obtain representation.  (T. at 42-51.)  ALJ Tielens retired, and a second hearing was held

before a different ALJ, John Ramos, on January 25, 2012.  (T. at 52-72.)  On February 3, 2012,

the ALJ issued a decision finding that Plaintiff was not disabled.  (T. at 17-41.)  The ALJ's

decision became the final decision of the Commissioner when the Appeals Council denied

Plaintiff's request for review on February 22, 2013.  (T. at 1-7.)  Plaintiff commenced this action

on March 27, 2013.  (Dkt. No. 1.)

_____

[1]        Page numbers in citations to the Administrative Transcript (Dkt. Nos. 9-1 - 9-8),
refer to the page numbers in the original document.

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To qualify for disability benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") promulgated regulations establishing a three-step sequential analysis to determine whether a child is eligible for SSI benefits on the basis of a disability.  20 C.F.R. § 416.924(a).  First, the ALJ considers whether the child is engaged in "substantial gainful activity."  *Id.* at § 416.924(b).  Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations."  *Id.* at § 416.924(c).  Finally, if the ALJ finds a severe impairment, he or she must then consider whether the impairment meets, medically equals, or functionally equals a disability listed in the regulatory "Listing of Impairments."  *Id.* at § 416.924(d).

In order to show that an impairment matches a Listing, the child must show that his or her impairment meets all of the specified criteria.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); 20 C.F.R. § 404.1525(d) (2007).  In order to determine whether a child's impairment "functionally equals" a Listing:

> The ALJ must examine the evidence of record and determine a child's level of functioning in "six domains."  The six domains are: acquiring and using information; attending and completing tasks;

interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being. If a child has "marked" limitations in two of the domains or an "extreme" limitation in one domain, then his impairments will "functionally equal" the Listings, and he will be found disabled.

*White ex rel. Johnson v. Barnhart,* 409 F. Supp. 2d 205, 207-08 (W.D.N.Y. 2006) (citing 20

C.F.R. § 416.926a(b)(1); 20 C.F.R. § 416.926a(d)).

Social Security Regulation 20 C.F.R. § 416.926a(e)(2), sections (i) and (iii), define

"marked" limitation as follows:

> (i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.
>
> * * *
>
> (iii) If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score. (*See* paragraph (e)(4) of this section.)

20 C.F.R. § 416.926a(e)(2).

## B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision.

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2012); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d

773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III. THE ALJ'S DECISION

Here, the ALJ found that the Child was not disabled at the third step of the analysis explained above. (T. at 24-24, 36.) Specifically, the ALJ found that the Child did not have a "marked" limitation in at least two of the six domains, or an "extreme" limitation in one of them. (T. at 36.) He found that the Child has "less than marked" limitations in the domains of "acquiring and using information" and "attending and completing tasks." (T. at 28, 30.) He found that she has no limitations in the other three domains. (T. at 32-35.)

## IV. THE PARTIES' CONTENTIONS

Plaintiff claims that the ALJ erred by: (1) failing to weigh and discuss the opinion of the Child's treating physician, Dr. Pizarro; (2) failing to properly analyze and discuss both Plaintiff's and the Child's credibility; and (3) making an unsupported and legally erroneous determination that the Child's impairment did not functionally equal a medical listing. (Dkt. No. 13.)

Defendant contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence and thus should be affirmed. (Dkt. No. 14.) For the reasons that follow, it is recommended that this matter be remanded to the Commissioner for further proceedings consistent with this Report-Recommendation.

## V. DISCUSSION

### A. Medical Opinion Evidence

#### 1. Additional Medical Evidence

The Commissioner contends that this Court must disregard the report of Dr. Pizarro dated January 23, 2013, which was submitted when the Plaintiff appealed the ALJ ruling to the

Appeals Council in September 2013. (Dkt. No. 14 at 14-15.) For this proposition, the Commissioner cites *Tirado v. Bowen* to state that a claimant must show good cause to have new evidence considered. 842 F.2d 595, 597 (2d Cir. 1988) (citing 42 U.S.C. § 405(g)(2006)). However, this is not the proper standard to apply in the circumstances of this case. Both *Tirado* and U.S.C. § 405(g) concern evidence submitted *after* the final decision of the Commissioner, that is, after the Appeals Council has made a final determination. *Tirado*, 842 F.2d 595 at 597; 42 U.S.C. § 405(g). Specifically, U.S.C. § 405(g) states that the court to which the finding has been appealed "may at any time order additional evidence to be taken *before the Commissioner of Social Security*, but only upon a showing that there is new evidence which is material and that there is good cause *for the failure to incorporate such evidence into the record in a prior proceeding*." 42 U.S.C. § 405(g) (emphasis added). This standard does not apply to evidence submitted to the Appeals Council before the decision of the ALJ became the final decision of the Commissioner. This evidence has already been before the Commissioner, when the Appeals Council made its determination.

Under 20 C.F.R. §§ 404.970(b) and 416.1470(b), a plaintiff is expressly authorized to submit new evidence to the Appeals Council without demonstrating good cause. Under the regulations, the Appeals Council must consider new and material evidence if it relates to the period on or before the date of the administrative law judge hearing decision. *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir.1996); 20 C.F.R. §§ 404.970(b). When it fails to do so, the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence. *See Milano v. Apfel*, 98 F.Supp.2d 209, 216 (D.Conn. 2000). Importantly, the treating physician rule applies to the Appeals Council when the new evidence at issue reflects the findings and

opinions of a treating physician. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).

Accordingly, the Appeals Council must give good reasons for the weight it assigns to a plaintiff's

treating physician's opinion. *Id*. It is insufficient for the Appeals Council to merely acknowledge

that they reviewed new evidence from a treating physician without providing such reasoning.

*Shrack v. Astrue,* 608 F.Supp.2d 297, 302 (D.Conn. 2009).

Here, the Appeals Council erred when it failed to address the new evidence in accordance

with the treating physician rule. The Appeals Council has not given good reason for the weight it

assigned to this new report from the Child's treating physician. It merely stated that "we found

that this information does not provide a basis for changing the [ALJ] decision." (T. at 2.) Based

on this language, it is impossible to determine whether the Appeals Council applied the treating

physician rule correctly, or at all. Furthermore, as this new information is part of the record, it

will be considered by this Court in making a decision, because this Court has the power to enter a

judgment "upon the pleadings and transcript of the record." 42 U.S.C. 405(g).

### 2. Weight Given to Dr. Pizarro

In addition to this new evidence, the final decision of the Commissioner is not supported

by substantial evidence because the ALJ failed to properly weigh the objective medical evidence

in the record.

While Plaintiff's contention that the ALJ erred by failing to discuss the "medical source

statement" by Dr. Pizarro is without merit, because that document was submitted directly to the

Appeals Council after the ALJ's decision was written, the ALJ nevertheless failed to properly

apply the treating physician rule with regard to Dr. Pizarro's other opinions. Notably, the ALJ

never stated the amount of weight being given to Dr. Pizarro, despite his acknowledgement that

Dr. Pizarro was the Child's treating pediatrician. (T. at 23.)

The medical opinions of a treating physician are given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record. 20 C.F.R. § 404.1527(d)(2) (2008).

"An ALJ who refuses to give controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004). These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(1)-(6) (2008).

The Regulations require the Commissioner's notice of determination or decision to "give good reasons" for the weight given a treating source's opinion. 20 C.F.R. § 404.1527(d)(2) (2008). This is necessary to assist in the courts review of the Commissioner's decision, and it "let[s] claimants understand the disposition of their cases." *Halloran v. Barnhart,* 362 F.3d 28, 33 (2d Cir. 2004) (citing *Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir. 1999). "A claimant . . . who knows that her physician has deemed her disabled, might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell,* 177 F.3d at 134.

"We do not hesitate to remand when the Commissioner has not provided good reasons for

the weight given to a treating physician[']s opinion, and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran,* 362 F.3d at 33. A case is generally remanded when the ALJ improperly excluded evidence, especially where the unconsidered evidence is significantly more favorable to the claimant than the evidence considered. *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010).

Here, the ALJ did not discuss the weight of the treating physician's opinion at all, thus it is impossible to determine on review what, if any, weight he has given it. (T. at 20-37.) While the ALJ did not assign any particular weight to the opinion of Dr. Pizarro, he accepted her opinion where it suggested a finding of not disabled (T. at 31), but rejected her opinion that the Child was "markedly atypical in restlessness, impulsive and emotional lability." (T. at 30.) If the ALJ failed to apply the treating physician rule because he believed that the information from Dr. Pizarro did not have enough detail to discern his medical opinion, then the ALJ may have had a "duty to affirmatively develop the administrative record" rather than disregard Pizarro's opinion. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (citations omitted). The duty of an ALJ to develop the record is "particularly important" when obtaining information from a claimant's treating physician due to the "treating physician" provisions in the regulations. *Id.* at 80 (citing *Clark v. Commissioner of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)). However, this Court does not reach the issue of whether the ALJ actually erred by failing to contact Dr. Pizarro, because remand is already necessary for elaboration of the ALJ's reasoning. On remand, the ALJ should address the treating physician rule in his decision.

### 3.    Weight Given to Other Medical Sources

"It is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination." *Nix v. Astrue*, No. 07-cv-344, 2009 U.S. Dist. LEXIS 98356, at *16, 2009 WL 3429616, at *6 (W.D.N.Y. Oct. 22, 2009) (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir.2004)).  In this case, the ALJ's opinion is inconsistent regarding the weight he has assigned to various portions of the medical opinion evidence.

The ALJ states that he accords "great weight" to the State agency medical opinion of one M. Totin, which states, among other things, that the Child has a marked limitation in the domain of acquiring and using information.  (T. at 26-27.)  He then immediately disregards this particular finding by Totin as "no longer valid."  (T. at 27.)  He also assigns "great weight" to the opinion of examining psychologist David Stang, Ph.D.  *Id.*  However, he then proceeds to disregard the finding by Dr. Stang that the Child "showed signs of fidgetiness, became giggly after 20 minutes, was distracted by her brother's presence, did not know the day or month, and had difficulty performing math calculations due to inattention."  (T. at 31.)  The reasons for this disregard, discussed below, are based on a factual error.

The ALJ relies heavily on the finding by the school psychologist that the Child has "average intellectual ability."  (T. at 28.)  However, an ALJ should not rely heavily on the findings of consultative physicians after a single examination without explaining why such a finding supercedes that of a treating physician.  *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013).  In this case, the school psychologist is analogous to a consultative examiner, because he only examined her on one day, February 9, 2010, and only examined her in a classroom setting

for one period, a writing class. (T. at 261, 263.) In addition, the ALJ fails to address portions of the actual observations by the psychologist which potentially support a finding of disabled. Specifically, the Child's teachers reported to the psychologist that she has weak reading comprehension, cannot write in paragraph form without supervision, only pays attention in class half of the time, and can only complete half of her work independently. (T. at 262.) He directly observed that she could not write in paragraph form, and that her writing was more difficult to follow than that of her classmates. (T. at 263.) While her IQ scores were average to low average, in specific areas she was well below average, reaching only the twenty-first percentile in short-term memory and the ninth percentile in visual discrimination. *Id*. He also notes that her "attention is suspect." (T. at 264.) While he designated her "of average intelligence," his summary concluded that she needs additional help in almost all areas, and that there is a possibility she may at some point need special education. (T. at 265.) The only portions of this report to which the ALJ referred were those which supported a finding of not disabled. (T. at 28-29, 31.) As discussed above, the ALJ also gave inconsistent findings for credibility of Dr. Pizarro. (T. at 30-31.)

Plaintiff argues in her opposition that "[i]t appears as though the ALJ is picking and choosing the parts of the medical consultant's opinion that support his determination, which is in error." (Dkt. No. 13 at 18.) Insofar as the inconsistencies in the ALJ's decision support this theory by Plaintiff, it is noted that "[i]t is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination." *Nix v. Astrue*, No. 07-cv-344, 2009 U.S. Dist. LEXIS 98356, at *16, 2009 WL 3429616, at *6 (W.D.N.Y. Oct. 22, 2009) (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir.2004)).

However, because remand is necessary based on the inconsistency itself, this Court does not make a finding on the ALJ's possible motivation for such inconsistency.

Lastly, the ALJ repeatedly referenced "objective medical evidence" which supports a finding of not disabled, in order to disregard "inconsistent" evidence which supports a finding of disabled. (T. at 24-25, 27-29, 31-32.) However, given the inconsistency in the ALJ's analysis of the weight of the available "objective medical evidence," it is not apparent in the record that any such coherent body of evidence exists to support the finding. To that extent, the finding of the ALJ is not supported by substantial evidence and should be remanded.

### B.     Credibility Determinations

The ALJ further erred when determining the credibility of the testimonial evidence by the Child and the Guardian.

"It is the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dept. of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citation omitted). In making a credibility determination, the hearing officer is required to take the claimant's reports of pain and other limitations into account. 20 C.F.R. § 416.929 (2014). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. § 404.1529 (2014); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010); SSR 96-7p, 1996 WL 374186, at *5 (S.S.A. July 2, 1996)[2]. The ALJ is required to consider all of the evidence of record in making his credibility assessment. *Genier,* 606 F.3d at 50 (citing 20 C.F.R. §§ 404.1529, 404.1545(a)(3) (2014)).

---

[2]      There is no Lexis citation for this source.

First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms. SSR 96-7p. This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms. *Id*. If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities. An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled. *Id.*

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to the consider extent to which the claimant's symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence. *Genier,* 606 F.3d at 49; *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence tending to support a conclusion that he has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms); *see also* SSR 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). This includes evaluation of the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Genier,* 606 F.3d at 49.

The ALJ must consider all evidence of record, including statements the claimant or others

14

make about her impairments, her restrictions, daily activities, efforts to work, or any other relevant statements the clamant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings. *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1512(b)(3) (2014)). A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone. SSR 96-7p. When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 U.S. Dist. LEXIS 4085, at *15, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999) (citing *Aponte*, 728 F.2d at 599; *Ferraris*, 728 F.2d at 582)). "A finding that a [claimant] is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams*, 859 F.2d at

260-61 (citation omitted) (finding that failure to make credibility findings regarding claimant's critical testimony undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not disabled). "Further, whatever findings the ALJ makes must be consistent with the medical and other evidence." *Id.* at 261 (citation omitted) ("[A]n ALJ must assess subjective evidence in light of objective medical facts and diagnoses.").

In this case, while it is the role of the ALJ to determine the credibility of the Guardian, he has not "set forth his [ ] reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis*, 62 F. Supp. 2d at 651. This is particularly difficult for this Court in light of the ALJ's inconsistent finding that the Guardian's prior statements to Dr. Pizarro were only credible when they supported a determination of "not disabled," as discussed above. The language which the ALJ uses to describe the credibility of the Guardian is vague but troubling. He says that her statements regarding the Child's capabilities are "not credible to the extent that they are inconsistent *with finding that the claimant does not have an impairment or combination of impairments that functionally equals the listings* for the reasons explained below." (T. at 26, emphasis added.) This implies that the ALJ made his determination of credibility based on a pre-conception that the Child was not disabled. *See Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (". . . [T]he assessment of a claimant's ability to work will often (and in the present case) depend heavily on the credibility of her statements concerning the 'intensity, persistence and limiting effects' of her symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards.").

Furthermore, when the Guardian's prior statements to Dr. Pizarro (as evinced through Pizarro's notes) suggested a finding of not disabled, he found those statements more credible than her hearing testimony. (T. at 29.) The ALJ gave "greater weight" to statements given to a treating source "for purposes of actual medical treatment." *Id.* However, when the Guardian's prior statements to Dr. Pizarro caused him to make findings of "markedly atypical," the ALJ disregarded these findings because they were "based on the subjective history provided by the claimant's mother." (T. at 30.) It appears, from this, that the ALJ's credibility assessment of the Guardian, especially regarding statements she made to Dr. Pizarro, is inconsistent, such that it is impossible to determine if the ALJ's decision is supported by substantial evidence.

Therefore, I find that the ALJ's determination of the Guardian's credibility was not sufficiently explained. Also, even if this determination were properly explained, it is not supported by substantial evidence, given the problems outlined above with the medical opinion evidence. On remand, the ALJ should clarify his reasoning for the credibility determinations of the Guardian.

## C.  Weight Given to Teachers' Opinions

The ALJ used an improper standard when analyzing the opinions of the Child's teachers, in particular, that of her fifth and sixth grade science teacher, Mr. Farber. The Commissioner argues that "[n]otably, Mr. Farber is not an acceptable medical source and his opinion is not entitled to deference." (Dkt. No 14 at 10.) This is not entirely accurate.

Despite being non-medical sources, teachers are "valuable sources of evidence for assessing impairment severity and functioning. Often, these sources have close contact with the individuals and have personal knowledge and expertise to make judgments about their

impairment(s), activities, and level of functioning over a period of time." SSR 06-03p, 2006 SSR LEXIS 5, at *8-9, 2006 WL 2329939, at *3. Furthermore, "under certain circumstances" a teacher's opinion may "properly be determined to outweigh the opinion from a medical source, including a treating source." 2006 SSR LEXIS 5, at *14, 2006 WL 2329939, at *6. "[A] teachers opinion cannot be dismissed solely because she is not an acceptable medical source, and instead the ALJ must consider all the relevant factors." *Smith v. Astrue*, 10-CV-00053 GTS, 2011 U.S. Dist. LEXIS 31513, at * 17, 2011 WL 1113779, at * 5 (N.D.N.Y Jan. 20, 2011) (court found that the ALJ's failure to properly evaluate the opinion of a child's teacher warranted remand).

Here, the ALJ disregarded all evidence provided by the Child's teachers, which strongly supported a finding of disabled. He acknowledges that her former teachers all "reported concerns that [she] had difficulty focusing in all subject areas, difficulty with reading and comprehending, and difficulty with multi-step math problems." (T. at 29.) He further acknowledges that Mr. Farber reported that she "had obvious and serious problems in all areas of functioning" in the domain of acquiring and using information. *Id*. Mr. Farber, in particular, has had the Child in his classroom every school day for two years. The ALJ disregarded the entirety of Mr. Farber's report because it was "inconsistent with the objective medical evidence concerning the claimant's generally good response to medication," that is, inconsistent with an observation by Dr. Pizarro that the Child's ADHD responds well to certain medications. (T. at 27.) Given the incorrect and inconsistent weight applied to the various medical sources in this case, it is not possible to determine that the ALJ properly considered the "valuable source of evidence" of Mr. Farber, who had access to and interaction with the Child more than any other

source besides the Guardian.  His determination of the weight assigned to Mr. Farber's opinion was not supported by substantial evidence, insofar as the determinations of the medical sources he compared it to were not supported by substantial evidence.  On remand, the ALJ should apply the correct rule in determining the weight of the opinions of the Child's teachers.

**D.      Factual Inaccuracies in the ALJ decision**

At two points in the ALJ decision, he makes statements that are factually untrue given the evidence in the record.

First, the ALJ states that "progress notes from Dr. Pizarro and school records show that . . . [the Child] did not have marked inattention, impulsiveness, or hyper activity."  (T. at 24.)  On the contrary, every time the Child treated for ADHD with Dr. Pizarro, her progress notes indicated that the Child was "markedly atypical" in restlessness and impulsiveness, as well as emotional lability.  (T. at 256, 300, 303, 305, 307, 309, 311, 319, 335.)  Although the final "medical source statement" (T. at 349), which more explicitly explain's Dr. Pizarro's opinion of the Child's limitations, was not available to the ALJ, the repetition in Dr. Pizarro's previous reports overwhelmingly indicate her opinion as to the Child's limitations to this Court.

Second, the ALJ discounted Dr. Stang's opinion that the Child "showed signs of fidgetiness, became giggly after 20 minutes, was distracted by her brother's presence, did not know the day or month, and had difficulty performing math calculations due to inattention."  (T. at 30-31.)  He disregarded these findings because "Dr. Stang examined the claimant in July 2010 and the claimant's mother testified that the claimant was not taking a stimulant medication during the summer months."  (T. at 31.)  However, the Guardian actually testified only that the Child was off her stimulant medication during the summer months "at the end of last school

year." (T. at 64.)  Because the hearing occurred in January 2012 (T. at 54), the "end of last

school year" would indicate that the Child was off her stimulant medication in the summer *of

2011*, not 2010.  This is corroborated by Dr. Pizarro's treatment notes, which indicate that in

June 2011, she recommended that the Child stop the stimulant medication because she was

losing weight.  (T. at 308.)  Therefore, she was apparently on stimulant medication in the

summer of 2010 when Dr. Stang examined her.  In fact, Dr. Pizarro's treatment notes from May

2010 directed the Child to remain on her stimulant medication at the same dose for the next three

months.  (T. at 336.)  The ALJ therefore improperly disregarded Dr. Stang's opinion based on

incorrect information.

Given these significant factual errors, which affect the medical opinion evidence, the

ALJ's decision was not supported by substantial evidence.  On remand, the ALJ should

reconsider the weight given to the medical opinions of Dr. Pizarro and Dr. Stang in light of the

correct time line of the Child's medication.

   **E.    Conclusion**

The ALJ improperly weighed the medical opinion evidence, the non-medical opinion

evidence, and the credibility of the Guardian.  He also based his reasoning in part on factually

incorrect information.  Accordingly, I recommend that this matter be remanded for

reconsideration of the weight of the evidence consistent with the reasoning herein.

   **WHEREFORE,** it is hereby

   **RECOMMENDED**, that this matter be remanded to the Commissioner, pursuant to

sentence four of 42 U.S.C. § 405(g),[3] for further proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.


Dated: July 30, 2014
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[3]      Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).